1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DANIEL NAGY,                              No. 2:11-cv-2948 WBS DB P

12                  Petitioner,

13        v.

14   D. DAVEY, et al.,                         FINDINGS AND RECOMMENDATIONS

15                  Respondent.

16

17        Petitioner is a state prisoner proceeding without counsel with a petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

19   entered against him in the San Joaquin County Superior Court on charges of spousal abuse with

20   great bodily injury, making a criminal threat, dissuading two witnesses by force, false

21   imprisonment by violence, and misdemeanor false imprisonment.  He seeks federal habeas relief

22   on the following grounds: (1) the evidence is insufficient to support his conviction for inflicting

23   great bodily injury and for dissuading two witnesses by force; (2) the trial court violated his right

24   to due process in admitting evidence of prior domestic violence; (3) the prosecutor committed

25   misconduct; (4) the trial court violated his right to due process in admitting hearsay evidence; (5)

26   the victim's outbursts while testifying violated his right to a fair trial; (6) the trial court erred in

27   denying his motions for substitute counsel; and (7) his trial counsel rendered ineffective

28   /////

                                              1

assistance.  Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied. [1]

**I. Background**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> This is a spousal abuse case in which defendant Daniel John Nagy was convicted by a jury of (count one) spousal abuse, a felony (Pen.Code, § 273.5, subd. (a)), (count two) making a criminal threat, a felony (Pen.Code, § 422), (count three) dissuading a witness by force, a felony (Pen.Code, § 136.1, subd. (c)(1)), (count four) false imprisonment by violence, a felony (Pen.Code, § 236), and (count five) false imprisonment, a misdemeanor (Pen.Code, § 236).[2]
>
> The jury found true enhancement allegations to counts one and two alleging that defendant inflicted great bodily injury in the commission of the offenses (§ 12022.7, subd. (e)).  The trial court found true an enhancement allegation that defendant had suffered four prior prison terms.  (§ 667.5, subd. (b).)
>
> Defendant was sentenced to the upper term of four years for spousal abuse, a consecutive eight month term for making a criminal threat, a consecutive eight month term for false imprisonment by violence, a consecutive three year term for dissuading a witness by force, plus an additional five years for the infliction of great bodily injury enhancement and an additional four years for the prior prison term enhancements.  Defendant was sentenced to a total term of 17 years and four months in state prison.
>
> Defendant claims there was insufficient evidence his victim sustained great bodily injury.  He claims his sentences on counts two and three should have been stayed pursuant to section 654.  He challenges the admission of evidence of his prior acts of domestic

---

[1]  In previous orders, this court determined that petitioner had failed to exhaust state court remedies with respect to his claim of ineffective assistance of trial counsel, and that four other claims might be unexhausted as well.  ECF No. 19; see also ECF Nos. 23, 25, 28, 29, 32, 34, 37.  Exhaustion of state court remedies is a prerequisite to the granting of a petition for a writ of habeas corpus.  28 U.S.C. §§ 2254(b)(1).  However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  Assuming arguendo that some of the claims petitioner raises in the instant petition have not been exhausted in state court, for the reasons set forth below this court recommends that all of petitioner's claims, including unexhausted claims, be denied on the merits.

[2]  Further section references to an undesignated code are to the Penal Code.

violence against the victim, and argues the admission of hearsay evidence was prejudicial.  He claims that the victim's outbursts against him denied him the right to a fair trial.  Finally, he claims the trial court erred in failing to appoint him new counsel.

We shall conclude there was no reversible error, and shall affirm the judgment and sentence.

**FACTUAL AND PROCEDURAL BACKGROUND**

In May 2008, Kimberly Dunn and defendant had a one month-old son.  Defendant, Dunn and their son resided in a house with Sherry Cobarrubias and another man.  Cobarrubias was defendant's ex-girlfriend, and Dunn's friend.  Cobarrubias was the son's primary caregiver.

Defendant was released from jail on May 29, 2008.  He arrived at his and Dunn's house around 5:00 p.m.  Dunn was drunk, and was afraid of defendant, knowing he would be angry.  The two argued because Dunn had spent defendant's bail money on narcotics and because defendant did not like the people living in their house.

Defendant stayed at the house two or three hours before going to Amy Taylor's house to get some drugs.  Dunn waited 20 minutes to one-half hour before following defendant to Taylor's house.  Taylor was also defendant's girlfriend.  Dunn was jealous and thought Taylor was a back-stabber.

When Dunn arrived at Taylor's house she was belligerent and angry.  She cursed and spat at defendant.  Dunn eventually passed out.  She woke up a couple of hours later, and Taylor's next door neighbor walked her home around 1:00 or 2:00 a.m.  Defendant stayed with Taylor.  When Dunn got home she went to her bedroom and went to sleep.

When Dunn woke up, she found out from Cobarrubias that defendant had never returned from Taylor's house.  Dunn called a cab to take her to Taylor's house.  She banged on Taylor's door.  It took a long time for defendant to answer.  When he did, he was angry and told Dunn she had no business there.  Dunn went to the bedroom where Taylor was sleeping and tried to wake her up.  As she did this, defendant grabbed Dunn by the arm and told her she needed to get home and take care of his son.

Defendant and Dunn started cursing at each other.  Defendant pulled her out onto the front porch and pushed her down the steps.  He pushed her down on the ground and kicked her.  He told her to get home and take care of his son.  Then he rode off on his bicycle.  Dunn picked herself up off the ground and walked home.

When she got home she asked Cobarrubias, who was in the downstairs family room, if she could use Cobarrubias's phone to call another cab.  She then went upstairs to the bedroom and lay down.  The next thing she heard was banging on the door and defendant yelling, "Where is that bitch?"  Dunn got up and went

3

downstairs.  As she got to the bottom of the stairs, Cobarrubias was opening the front door to defendant.  He came in and told Dunn to "get upstairs, bitch."  He kicked her and told her to get in her room because she was "on restriction" meaning she could not come out.  When they were at the top of the stairs, defendant took Cobarrubias's phone away from Dunn and threw it down the stairs, breaking it.

When Cobarrubias complained that he had broken her phone, he asked her why she needed a phone, and asked her if she were a rat.  Cobarrubias tried to calm down defendant, but eventually he pushed her hard on her chest and told her to get in her bedroom and that she was on restriction until her husband got out of jail and could deal with her.  Cobarrubias went into her room with the baby and shut the door.  She heard defendant go back upstairs.

The beatings started when defendant and Dunn were upstairs.  Defendant punched her in the face, choked her, and pulled her hair.  She could not breathe.  She thought he was going to kill her.  Dunn was screaming for Cobarrubias to help her when defendant put a screwdriver to her neck and told her that if she made one more sound he did not like he would take out her windpipe so she could never scream again.

Cobarrubias heard Dunn asking her for help.  She climbed out a window with the baby, ran to the Hazelton Clinic, and asked them to call the police.  Defendant eventually left the house.

Police officer Patrick High arrived on the scene at 8:26 a.m.  He testified that one of Dunn's eyes was black and swollen shut, and that there were black and blue marks underneath the other eye.  She had blood in her eye, dried blood around her mouth, and blood coming from her ears.  One of her fingers was swollen, and she complained of pain in her hand.  She said her jaw was broken, and she had other bruises on her legs.  She identified defendant as her attacker.

Dunn was transported by ambulance to St. Joseph's Medical Center.  Officer High took a statement from her at the hospital.  She told High there had been some domestic violence incidents when she had been seven months pregnant, that she had called the police, and that defendant had been arrested and his parole violated.  He had been sent back to prison for two months for the parole violation.

Dr. Ellison Cordray examined Dunn in the emergency room, but Dunn left to get her methadone before he could perform a full body examination.  Dr. Cordray observed that Dunn's face was swollen, both eyes were bruised and swollen, there was a small laceration in her right ear, and abrasions on her forehead and upper part of her face.  He found the injury to the ear concerning because if left untreated it could cause irreversible damage to the cartilage.

Dr. Cordray examined Dunn again the next day.  That time, he noticed bruising and swelling on the fourth finger of her right hand.  An X-ray revealed that the finger was fractured.  It was a spiral

4

fracture caused by the finger being twisted. Dunn once again left before the exam could be completed.

People v. Nagy, No. C063724, 2011 WL 2848649, at *1–3 (Cal. Ct. App. July 19, 2011).

After the California Court of Appeal affirmed his judgment of conviction, petitioner filed a petition for review in the California Supreme Court, in which he raised many of the same claims he raised on appeal. Resp't's Lod. Doc. 9. That petition was summarily denied. Resp't's Lod. Doc. 10.

**II. Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, ___ U.S. ___, ___, 132 S. Ct. 38, 44 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606

1    F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen

2    a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme]

3    Court has not announced."  Marshall v. Rodgers, ___ U.S. ___, ___, 133 S. Ct. 1446, 1450 (2013)

4    (citing Parker v. Matthews, ___ U.S. ___, ___, 132 S. Ct. 2148, 2155 (2012)).  Nor may it be

5    used to "determine whether a particular rule of law is so widely accepted among the Federal

6    Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct.  Id.  Further,

7    where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is

8    "clearly established Federal law" governing that issue.  Carey v. Musladin, 549 U.S. 70, 77

9    (2006).

10           A state court decision is "contrary to" clearly established federal law if it applies a rule

11   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

12   precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003).

13   Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

14   writ if the state court identifies the correct governing legal principle from the Supreme Court's

15   decisions, but unreasonably applies that principle to the facts of the prisoner's case.  Lockyer v.

16   Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002

17   (9th Cir. 2004).  A federal habeas court "may not issue the writ simply because that court

18   concludes in its independent judgment that the relevant state-court decision applied clearly

19   established federal law erroneously or incorrectly.  Rather, that application must also be

20   unreasonable."  Williams, 529 U.S. at 412.  See also Schriro v. Landrigan, 550 U.S. 465, 473

21   (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

22   review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

23   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

24   'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v.

25   Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

26   Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

27   must show that the state court's ruling on the claim being presented in federal court was so

28   /////

1   lacking in justification that there was an error well understood and comprehended in existing law

2   beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

3          If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

4   court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford,

5   527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

6   (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

7   2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

8   de novo the constitutional issues raised.").

9          The court looks to the last reasoned state court decision as the basis for the state court

10   judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

11   If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

12   previous state court decision, this court may consider both decisions to ascertain the reasoning of

13   the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a

14   federal claim has been presented to a state court and the state court has denied relief, it may be

15   presumed that the state court adjudicated the claim on the merits in the absence of any indication

16   or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption

17   may be overcome by a showing "there is reason to think some other explanation for the state

18   court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803

19   (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but

20   does not expressly address a federal claim, a federal habeas court must presume, subject to

21   rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, ___ U.S. ___,

22   ___, 133 S. Ct. 1088, 1091 (2013).

23          Where the state court reaches a decision on the merits but provides no reasoning to

24   support its conclusion, a federal habeas court independently reviews the record to determine

25   whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v.

26   Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo

27   review of the constitutional issue, but rather, the only method by which we can determine whether

28   a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no

1  reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

2  reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

3       A summary denial is presumed to be a denial on the merits of the petitioner's claims.

4  Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze

5  just what the state court did when it issued a summary denial, the federal court must review the

6  state court record to determine whether there was any "reasonable basis for the state court to deny

7  relief." Richter, 562 U.S. at 98.  This court "must determine what arguments or theories . . . could

8  have supported, the state court's decision; and then it must ask whether it is possible fairminded

9  jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

10  decision of [the Supreme] Court." 562 U.S. at 102.  The petitioner bears "the burden to

11  demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v.

12  Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

13       When it is clear, however, that a state court has not reached the merits of a petitioner's

14  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

15  habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462

16  F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

17  **III.  Petitioner's Claims**

18    **A.  Insufficient Evidence of Great Bodily Injury**

19       In his second ground for relief, petitioner claims that the evidence introduced at his trial is

20  insufficient to support the jury's finding that he inflicted great bodily injury on the victim in the

21  commission of counts one and two (corporal injury to a spouse or cohabitant and making criminal

22  threats).[3]  He states, in full:

23          The victim had a fractured finger.  Left the scene to go get drunk
           went to the hospital the next day got an exray, left again with out
24          being treated four days later she put a splint on her finger herself.
           And needed no treatment.

25

26

_____

27  [3]  For purposes of clarity, petitioner's first ground for relief, in which he claims that his trial
   counsel rendered ineffective assistance, will be addressed at the end of these findings and
28  recommendations.

ECF No. 1 at 5.  In the traverse, petitioner argues that Dunn suffered injuries that were "only transitory and short-lived bodily distress."  ECF No. 42 at 1.  He notes that the emergency room physician who examined Dunn testified that she had "small cuts that did not require sutures, and bruises."  *Id.* at 2.  Petitioner also notes that there was no evidence Dunn suffered any permanent damage to her ear or that she required extensive treatment for her broken finger.  Id. at 2-3.

This claim was raised in the California Court of Appeal on direct appeal and in the California Supreme Court in a petition for review.  "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim throughout the entire direct appellate process of the state."  Casey v. Moore, 386 F.3d 896, 916 (9th Cir. 2004) (citing Liebman & Hertz, Federal Habeas Corpus Practice and Procedure, § 23.3b (4th ed. 1998)).  Petitioner presented this claim through every level of direct review.  Therefore, it is exhausted.

**1. State Court Decision**

The California Court of Appeal petitioner's arguments, reasoning as follows:

> **Evidence of Great Bodily Injury**
>
> In counts one and two (infliction of corporal injury to a spouse or cohabitant and making criminal threats, respectively), the jury found as an enhancement that defendant personally inflicted great bodily injury in the commission of the offense.  Defendant argues there was insufficient evidence of great bodily injury to support the enhancements. We disagree.
>
> Section 12022.7, subdivision (e) provides that a person who inflicts great bodily injury under circumstances involving domestic violence shall be punished an additional consecutive term of three, four, or five years. The trial court imposed an additional five year sentence for count one, and stayed the five year sentence for count two.
>
> "Great bodily injury" is defined by statute as "a significant or substantial physical injury." (§ 12022.7, subd. (f).)  "Proof that a victim's bodily injury is 'great' – that is, significant or substantial within the meaning of section 12022.7 – is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury."  (People v. Cross (2008) 45 Cal.4th 58, 66; examples of qualifying injuries omitted.)  The injury must be "a substantial injury beyond that inherent in the offense itself . . . ."  (People v. Escobar (1992) 3 Cal.4th 740, 746–747; People v. Cross, supra, at p. 64.)

/////

9

In *Escobar* the Supreme Court held that section 12022.7 does not require that the victim suffer permanent, prolonged or protracted disfigurement, impairment, or loss of bodily function. The test is more general. It requires that the victim suffer significant or substantial physical injury beyond that inherent in the offense itself. (3 Cal.4th at pp. 746–747, 750.)

In making these determinations the jury is granted considerable discretion. The terms "significant or substantial" are not self defining. Their meaning appears when the terms are applied. To the extent that the application is left to the trier of fact, discretion is granted to define the terms. "'A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description. Clearly, it is the trier of fact that must in most situations make the determination.'" (*Escobar*, *supra*, 3 Cal.4th at p. 752; citation omitted.)

The substantial evidence rule governs the appellate determination whether the facts support a lawful application of the terms "significant or substantial" in the circumstances of the case. We are directed to affirm the jury's finding of great bodily injury if there is substantial evidence to sustain it, even though the evidence could also support a contrary finding. (People v. Escobar, *supra*, 3 Cal.4th at p. 750.)

As noted, Dunn suffered a spiral fracture to one finger, bruising and swelling around the eyes, abrasions to the face, bruising on the legs, and a laceration in the ear that, if left untreated, could cause permanent damage. These injuries were not insignificant and are sufficient to support the jury's finding of great bodily injury.

Defendant's reliance on People v. Nava (1989) 207 Cal.App.3d 1490 for the proposition that a broken bone does not per se constitute great bodily injury is misplaced. People v. Nava, *supra*, held that it was error to instruct the jury that a bone fracture constitutes a significant and substantial physical injury within the meaning of the statute. (Id. at p. 1494.) The court concluded that a broken bone may constitute great bodily injury, but that every bone fracture does not constitute great bodily injury as a matter of law. (Id. at p. 1498.) The instruction in People v. Nava, *supra*, was error because it usurped the fact-finding role of the jury. (Id. at pp. 1497–1498.) There was no similar instruction in this case.

*Nagy*, 2011 WL 2848649, at *3–4.

### 2. **Applicable Law**

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any

10

1   rational trier of fact could have found the essential elements of the crime beyond a reasonable

2   doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  "[T]he dispositive question under

3   Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a

4   reasonable doubt.'"  Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443

5   U.S. at 318).  Put another way, "a reviewing court may set aside the jury's verdict on the ground

6   of insufficient evidence only if no rational trier of fact could have agreed with the jury."  Cavazos

7   v. Smith, ___ U.S. ___, 132 S.Ct. 2, *4 (2011).

8          In conducting federal habeas review of a claim of insufficient evidence, "all evidence

9   must be considered in the light most favorable to the prosecution."  Ngo v. Giurbino, 651 F.3d

10  1112, 1115 (9th Cir. 2011).  "Jackson leaves juries broad discretion in deciding what inferences

11  to draw from the evidence presented at trial," and it requires only that they draw "'reasonable

12  inferences from basic facts to ultimate facts.'"  Coleman v. Johnson, ___ U.S. ___, 132 S.Ct.

13  2060, 2064 (2012) ( per curiam ) (citation omitted).  "'Circumstantial evidence and inferences

14  drawn from it may be sufficient to sustain a conviction.'"  Walters v. Maass, 45 F.3d 1355, 1358

15  (9th Cir.1995) (citation omitted).

16          "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging

17  the sufficiency of the evidence used to obtain a state conviction on federal due process grounds."

18  Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  In order to grant relief, the federal habeas

19  court must find that the decision of the state court rejecting an insufficiency of the evidence claim

20  reflected an objectively unreasonable application of Jackson and Winship to the facts of the case.

21  Ngo, 651 F.3d at 1115; Juan H., 408 F.3d at 1275 & n.13.  Thus, when a federal habeas court

22  assesses a sufficiency of the evidence challenge to a state court conviction under AEDPA, "there

23  is a double dose of deference that can rarely be surmounted."  Boyer v. Belleque, 659 F.3d 957,

24  964 (9th Cir. 2011).  The federal habeas court determines sufficiency of the evidence in reference

25  to the substantive elements of the criminal offense as defined by state law.  Jackson, 443 U.S. at

26  324 n.16; Chein, 373 F.3d at 983.

27  /////

28  /////

### 3.  Analysis

After reviewing the state court record in the light most favorable to the jury's verdict, and for the reasons expressed by the California Court of Appeal, this court concludes that there was sufficient evidence introduced at petitioner's trial to support the jury's great bodily injury enhancements.  The court reaches this conclusion even though it would have been possible for the jury to find that Dunn's injuries did not constitute "a significant or substantial injury."  The question in this federal habeas action is not whether there was evidence from which the jury could have found for the petitioner on this issue.  Rather, in order to obtain federal habeas relief, petitioner must demonstrate that the state courts' denial of relief was an objectively unreasonable application of the decisions in Jackson and Winship to the facts of this case.  Specifically, petitioner must show that no rational trier of fact could have found that Dunn's injuries were "significant" or "substantial" and that no rational trier of fact could have agreed with the jury's decision on this issue.  Petitioner has failed to make this showing, or to overcome the "double dose" of deference due to the state court's findings of fact and its analysis of this claim.  Accordingly, he is not entitled to federal habeas relief on his claim of insufficient evidence to support the great bodily injury enhancements.

**B.  Insufficient Evidence to Support His Conviction for Dissuading a Witness by Force**

In his next ground for relief, petitioner claims that the evidence was insufficient to support his conviction for dissuading two witnesses by force.  ECF No. 1 at 5.  He argues that, at most, he only dissuaded one witness.  Id.  Petitioner explains:

> There was two separate girls one was down stairs and one upstiars they say I disuaded both witnesses with one act at the same time with violence.  There is no evidence of a second victim being disuaded.

Id.  In the traverse, petitioner repeats his appellate arguments that the evidence was insufficient to support his conviction for dissuading Cobarrubias by force from reporting his acts to the police.  ECF No. 42 at 4-5.  He also raises several arguments to the effect that his sentence on counts Two

/////

12

and Three should be stayed pursuant to Cal. Penal Code §654 because the prosecutor improperly used the same acts to prove different crimes.  Id. at 4-6.

Petitioner raised these claims on direct appeal and in his petition for review.  Accordingly, the claims are exhausted.  Casey, 386 F.3d at 916.

### 1.  State Court Decision

The California Court of Appeal described petitioner's allegations and its ruling thereon, as follows:

**Penal Code section 654; Count Three, Dissuading a Witness**

The jury found the defendant guilty of count three, that the defendant unlawfully prevented and dissuaded Dunn and Cobarrubias from reporting a crime by force and threats of injury. (§ 136.1, subd. (c)(1).)

The elements of a violation of section 136.1, subdivision (c) are: (1) the person dissuaded was a witness or victim; (2) the defendant, with the specific intent to do so, attempted to prevent or dissuade the person from making a report of the victimization to any peace officer; (3) the defendant acted knowingly and maliciously; and (4) the dissuasion involved force or the threat of force. (People v. Upsher (2007) 155 Cal.App.4th 1311, 1320; People v. Ortiz (2002) 101 Cal.App.4th 410, 416.)   A violation of section 136.1, subdivision (c) occurs when the defendant knowingly and maliciously attempts to prevent or dissuade a victim or witness to a crime from making a report of the victimization to any peace officer. (§ 136.1, subd. (b)(1) & (c).)[4]

---

[4]  Section 136.1, subdivisions (b)-(f) provide in pertinent part:

"(b) Except as provided in subdivision (c), every person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison:

(1) Making any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge.

......

(c) Every person doing any of the acts described in subdivision (a) or (b) knowingly and maliciously under any one or more of the following circumstances, is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years under any of the following circumstances:

Defendant argues the evidence was insufficient to sustain the verdict as to Cobarrubias. He argues that as a result, there was sufficient evidence to sustain the verdict as to Dunn, only. Furthermore, since the prosecution relied on the same acts to convict him of corporal injury to Dunn and dissuading Dunn, the sentence for count three must be stayed pursuant to section 654.

Defendant claims the evidence was insufficient to sustain count three as to Cobarrubias because, according to Cobarrubias's testimony, defendant's acts of breaking her phone and pushing her into her bedroom occurred before defendant made any criminal threat to Dunn. He argues that the acts of breaking Cobarrubias's phone and throwing her into her bedroom did not establish the element of dissuading her by force because neither act was accompanied by any threat.

Dunn and Cobarrubias gave conflicting accounts at trial of the chronology of events. Dunn testified that defendant beat her and threatened her with a screwdriver before he went downstairs and she heard Cobarrubias's phone being smashed. Cobarrubias testified that she heard defendant and Dunn arguing upstairs when defendant took her phone away from Dunn and threw it downstairs. When Cobarrubias told him he had broken her phone, he asked why she needed a phone. He asked if she were a "rat," which she knew meant he was asking if she would call the police. After that, defendant pushed her into her bedroom and told her she was "on restriction." While she was in her bedroom, she heard defendant hitting Dunn, and heard Dunn screaming for help.

In the version of events Cobarrubias relayed to Officer High, defendant started beating Dunn before he broke Cobarrubias's phone and before he pushed her into her bedroom. Cobarrubias

(1) Where the act is accompanied by force or by an express or implied threat of force or violence, upon a witness or victim or any third person or the property of any victim, witness, or any third person.

.....

(d) Every person attempting the commission of any act described in subdivisions (a), (b), and (c) is guilty of the offense attempted without regard to success or failure of the attempt. The fact that no person was injured physically, or in fact intimidated, shall be no defense against any prosecution under this section.

(e) Nothing in this section precludes the imposition of an enhancement for great bodily injury where the injury inflicted is significant or substantial.

(f) The use of force during the commission of any offense described in subdivision (c) shall be considered a circumstance in aggravation of the crime in imposing a term of imprisonment under subdivision (b) of Section 1170."

14

told Officer High that defendant broke her phone after Dunn told her to call the police and get help. This occurred after defendant began punching Dunn. She said she heard fighting and Dunn yelling upstairs. Defendant came downstairs, locked the front door, and "threw" Cobarrubias into her bedroom telling her "Don't leave" and "Your job is to watch the baby." Cobarrubias stated she did not think she could leave at that point.

As is relevant here, subdivision (c)(1) of section 136.1 provides that the crime is a felony if the act of dissuading a witness or victim is knowing and malicious and is accompanied by force upon the witness or the property of the witness or by an express or implied threat of force or violence upon the witness or the property of the witness. Defendant threw Cobarrubias's phone to the ground and broke it after Dunn asked Cobarrubias to phone for help. After breaking the phone he indicated to Cobarrubias that he thought she wanted to use it so she could "rat" on him. His words and actions constituted an attempt to prevent Cobarrubias from reporting his crime against Dunn, thus constituted an act of dissuading a witness. The dissuasion was accompanied by force against the property of the witness – hurling her phone to the ground and breaking it. This satisfied the force element of the crime. These words and acts were followed by defendant pushing Cobarrubias and making her go to her room, further satisfying the element of force accompanying the dissuasion. No separate threat was necessary to commit a violation of section 136.1, subdivision (c)(1).

Defendant also argues that the jury's verdict convicting defendant of the lesser included offense of misdemeanor false imprisonment represents a rejection of the prosecution's theory that defendant used force or fear to confine Cobarrubias, and therefore a rejection of the theory that defendant dissuaded Cobarrubias by force or fear when he threw her into her bedroom and told her to stay there. The verdict convicting defendant of felony dissuading a witness was not inconsistent with the verdict convicting him of only misdemeanor false imprisonment. Felony false imprisonment requires that the confinement be "accomplished" by violence or menace, and the jury was so instructed. Felony dissuading a witness requires the act of dissuasion be "accompanied by force or by an express or implied threat of force or violence[.]" There was evidence in the record that defendant's use of force, i.e., pushing her on the chest, accompanied the dissuasion of Cobarrubias, but did not accomplish her confinement.

According to Cobarrubias's testimony at trial, the events unfolded as follows. Cobarrubias unlocked the door and let defendant in. Defendant went upstairs and Cobarrubias heard him arguing with Dunn. Dunn was at the top of the stairs trying to leave when defendant threw Cobarrubias's phone downstairs. Cobarrubias heard yelling and scuffling from the upstairs hallway. Defendant told Dunn to go into her room, and that she was on restriction. Cobarrubias yelled at defendant that he had broken her phone. He impliedly asked her if she was being a rat. As he said this he started downstairs. Defendant went through Dunn's purse, throwing things out of it in a rage. Cobarrubias watched defendant do this

from her bedroom door.  Cobarrubias went out into the hallway, trying to calm down defendant.  While they were talking, Dunn came downstairs.  Defendant went to force her back upstairs and they scuffled.  As they went back up the stairs they started yelling and Cobarrubias took the baby back in her bedroom and shut the door.  She heard Dunn yell at defendant to stop hitting her. Cobarrubias came out of her room and yelled up at defendant.  She could still hear scuffling in the upstairs hallway, but could not see them.  As Cobarrubias went back toward her bedroom, defendant came back downstairs.  Cobarrubias was trying to calm down defendant, but Dunn kept yelling at him.  Cobarrubias started to leave the living room to go to the kitchen and make a bottle for the baby.  Defendant told her he was glad she was there to take care of the baby, then he pushed her hard on her chest and told her to go back to the bedroom.  He told her she was on restriction until her husband got out of jail.  She would not go into the bedroom, so he pushed her again, but not as hard the second time.  She started walking toward the bedroom and he told her to shut the door.  After that, she heard defendant threaten Dunn with the screwdriver.

These events were sufficiently close in time that the jury could have found that the defendant's inquiry implying Cobarrubias was a rat was accompanied by his use of force pushing her back to her room. The use of force certainly accompanied his direction to Cobarrubias to go to her room and lock the door.  His use of the term "on restriction" implied that she was not to come out.  However, the jury could have reasonably inferred from Cobarrubias's testimony that she walked into her room on her own, and was not forcibly carried there by defendant.  Thus, the jury could have found that her confinement was not accomplished by force.

Defendant argues his sentence for dissuading the victim from reporting the crime must be stayed pursuant to section 654 because it was based on the same act upon which the spousal abuse charge (§ 273.5, subd. (a)) was based.  As we have determined that there was sufficient evidence to convict defendant of violating section 136.1 against Cobarrubias, defendant is subject to a consecutive sentence for this violation.[5]

Nagy, 2011 WL 2848649, at *4–7.

/////

---

[5]   In any event, the argument has no merit.  Section 273.5 requires that the defendant inflict corporal injury resulting in a traumatic condition on a cohabitant.  The prosecutor argued that the crime was committed when defendant repeatedly beat Dunn, choked her, and punched her.  He argued that these actions resulted in the injuries that other witnesses observed.

There was no evidence that the threat with the screwdriver caused corporal injury to Dunn.  The threat to prevent Dunn from screaming for help was based on a different act than the acts forming the basis of the conviction for spousal abuse.  The trial court did not err in imposing a consecutive sentence.

16

**2. Analysis**

As in the claim above, petitioner has failed to demonstrate that the state courts' denial of relief on this claim was an objectively unreasonable application of the decisions in Jackson and Winship to the facts of this case.  As explained by the California Court of Appeal, the jury could have found, based on the testimony of Dunn and Cobarrubias, that petitioner dissuaded Cobarrubias from reporting a crime when he broke her phone after Dunn asked her to call for help, "threw" her into her bedroom, and told her not to leave.  Petitioner has failed to show that no rational trier of fact could have found that petitioner dissuaded Cobarrubias from reporting his abuse to the police, as that crime is defined in California law.  Accordingly, petitioner is not entitled to habeas relief on this claim.

Petitioner's allegations with regard to the calculation of his sentence constitute a state law claim which is not cognizable in this federal habeas corpus action.  Wilson, 562 U.S. at 5 ("it is not the province of a federal habeas court to reexamine state court determinations on state law questions") (quoting Estelle, 502 U.S. at 67-68).  So long as a sentence imposed by a state court "is not based on any proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for violation of state statutes are matters of state concern."  Makal v. State of Arizona, 544 F.2d 1030, 1035 (9th Cir. 1976).  See also Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994) ("[a]bsent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief").  Petitioner has failed to show that his sentence on counts Two and Three is fundamentally unfair or that it otherwise violates federal law.  Accordingly, he is not entitled to federal habeas relief on his claim that his sentence on two of the counts against him should be stayed pursuant to Cal. Penal Code § 654.

**C.  Erroneous Admission of Evidence of Prior Domestic Violence**

In his next ground for relief, petitioner claims that the trial court violated his rights to due process and equal protection in admitting evidence of prior domestic violence.  ECF No. 1 at 6.  Specifically, he complains that the prosecutor was allowed to admit evidence of three uncharged /////

17

1    incidents of domestic violence based solely on the testimony of witnesses, police officers and a

2    nurse, even though his actions did not result in criminal charges.  Id.

3         This claim was raised on direct appeal and in petitioner's petition for review.

4    Accordingly, it is exhausted.  Casey, 386 F.3d at 916.

5                                  **1. State Court Decision**

6         The California Court of Appeal denied petitioner's claim in this regard, reasoning as

7    follows:

8                        **Evidence of Prior Domestic Violence**

9              Defendant argues that the admission of evidence of his prior acts of
10            domestic violence pursuant to Evidence Code sections 1101,
              subdivision (b) and 1109 violated his federal constitutional rights to
11            due process and equal protection, and that the evidence should have
              been excluded pursuant to Evidence Code section 352.  We reject
12            both claims.

13            Evidence Code section 1109, subdivision (a)(1) provides in relevant
              part: "in a criminal action in which the defendant is accused of an
14            offense involving domestic violence, evidence of the defendant's
              commission of other domestic violence is not made inadmissible by
15            Section 1101 if the evidence is not inadmissible pursuant to Section
              352."  Evidence Code section 1101 provides in relevant part that
16            evidence of prior criminal acts of a defendant are admissible when
              they are relevant to prove some fact other than the defendant's
17            disposition to commit such acts.

18            The prosecution sought the admission of the following evidence of
              four prior incidents of domestic violence.  First, on January 30,
19            2008, police responded to a 911 call by Dunn.  Dunn reported
              defendant grabbed her by the hair and threw her on the ground, then
20            hit her in the head with a clog.  She had a two-inch swollen area
              and a small laceration on the side of her head.  Dunn was six
21            months pregnant. No charges were filed.

22            Second, on February 1, 2008, police officers were dispatched to
              Dunn's home after she reported that defendant grabbed her hair,
23            pulled her to the ground, and began hitting her with his fist in the
              chest and face.  Dunn suffered a small laceration on her upper lip
24            that was not bleeding.  No charges were filed.

25            Third, on February 19, 2008, Dunn was seen for a pregnancy exam.
              The nurse examiner noticed Dunn's right eye was bright red, and
26            that she had a one-to-two week old bruise on her upper arm.  Dunn
              told the nurse that the injuries were inflicted when defendant bit her
27            and hit her.  When the nurse told Dunn she was required to report
              the abuse, Dunn became uncooperative and left.

28    /////

18

Fourth, on June 11, 2008, an investigator with the district attorney's office interviewed Dunn's 13 year-old son.  The son stated that he had witnessed defendant put a knife to Dunn's throat.  No charges were filed.

The trial court admitted the first three incidents, and found they were probative and not highly prejudicial.  The trial court excluded the incident involving Dunn's 13 year-old son, finding the information vague and cumulative.

**A. Defendant's Constitutional Claims**

Defendant argues Evidence Code section 1109 violates due process and equal protection.  He claims this argument was not forfeited by failure to raise the objection at trial because any objection would have been futile in light of People v. Falsetta (1999) 21 Cal.4th 903 (Falsetta), which upheld the constitutionality of a parallel statute (Evid.Code, § 1108), and in light of the rejection of similar due process challenges to Evidence Code section 1109 by the appellate courts.

Whether or not the argument was forfeited, it is meritless.  This court held in People v. Johnson (2000) 77 Cal.App.4th 410, 412, that Evidence Code section 1109 does not violate a defendant's right to due process.  We stated that the California Supreme Court issued an opinion in Falsetta holding that Evidence Code section 1108, which allows admission of prior sex offenses, does not violate due process.  (Id. at p. 417.)  We concluded that "by parity of reasoning [with Falsetta], the same applies to Evidence Code section 1109, since the two statutes are virtually identical, except that one addresses prior sexual offenses while the other addresses prior domestic violence."  (Ibid.)  We agree with People v. Johnson, supra, and adopt its analysis.

Defendant's equal protection argument – that Evidence Code section 1109 treats criminal defendants accused of domestic violence differently from all other criminal defendants except sex offenders – is also meritless.  A similar contention was rejected in People v. Jennings (2000) 81 Cal.App.4th 1301.  Jennings, supra, reasoned that even if domestic violence defendants were "similarly situated" with respect to all other criminal defendants, a fact that Jennings had failed to demonstrate, the appropriate standard of review is not strict scrutiny.  (Id. at pp. 1311–1312.)  Instead, the statute satisfies equal protection requirements if it bears a rational relationship to a legitimate state purpose.  (Id. at p. 1312.)  "Absolute equality is not required; the Constitution permits lines to be drawn. [Citation.] The distinction drawn by section 1109 between domestic violence offenses and all other offenses is clearly relevant to the evidentiary purposes for which this distinction is made."  (Id. at p. 1311.)  The statute thus satisfies equal protection.

Defendant claims the proper standard of review is strict scrutiny because his fundamental right of freedom is affected by the classification.  Jennings, supra, addressed this claim and dismissed it.  So do we.  Jennings held that while statutes allowing certain

19

evidence against particular kinds of criminal defendants may make prosecution easier, this does not render such statutes direct restraints on the defendant's personal liberty.  (81 Cal.App.4th at p. 1312.)  "To require strict scrutiny analysis in this case would as a practical matter deny the Legislature the power to admit propensity evidence in any case unless it was admissible in all cases.  Equal protection does not require the state to choose between attacking every aspect of a problem or not attacking the problem at all, and does not prohibit the Legislature from regulating certain classes of cases in which the need is deemed most evident.   [Citation.]."  (Jennings, supra, 81 Cal.App.4th at pp. 1312–1313.)

**B. Defendant's Evidence Code Section 352 Claim**

Defendant also claims the trial court abused its discretion when it failed to exclude the evidence pursuant to Evidence Code section 352.  Defendant has waived this argument.

The prosecution filed a written in limine motion to admit evidence of prior instances of domestic violence, to which no written opposition appears in the record.  At the hearing on the motion, defense counsel conceded the admissibility of the prior acts when he stated: "I believe that in addition to the [section] 1109 issue that there [are] other issues which would support an admission of the incidents . . . ."  Defense counsel then noted that the incidents all involved Dunn and all occurred in a "very short period" of time.

Unless defendant objected to the admissibility of the evidence on this ground at trial, the issue is not preserved for appellate review. (Evid.Code, § 353, subd. (a); People v. Kipp (2001) 26 Cal.4th 1100, 1124.)  Defendant makes no argument that an objection pursuant to Evidence Code section 352 would have been futile. The argument is waived.

Nagy, 2011 WL 2848649, at *7–9.

## 2.  Procedural Default

Respondent argues that the California Court of Appeal's conclusion that petitioner may

have forfeited his federal challenges and did forfeit his state law challenges to the admission of

evidence of prior acts of domestic violence constitutes a state procedural bar which precludes this

court from addressing the merits of this jury instruction claim.  ECF No. 15 at 13.

As a general rule, "[a] federal habeas court will not review a claim rejected by a state

court 'if the decision of [the state] court rests on a state law ground that is independent of the

federal question and adequate to support the judgment."  Walker v. Martin, 562 U.S. 307, 315

(2011) (quoting Beard v. Kindler, 558 U.S. ___, ___, 130 S. Ct. 612, 615 (2009)).  See also

Maples v. Thomas, ___U.S.___, ___, 132 S. Ct. 912, 922 (2012); Greenway v. Schriro, 653 F.3d

20

1    790, 797 (9th Cir. 2011); Calderon v. United States District Court (Bean), 96 F.3d 1126, 1129

2    (9th Cir. 1996) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  However, a

3    reviewing court need not invariably resolve the question of procedural default prior to ruling on

4    the merits of a claim.  Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997); see also Franklin v.

5    Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002): ("Procedural bar issues are not infrequently more

6    complex than the merits issues presented by the appeal, so it may well make sense in some

7    instances to proceed to the merits if the result will be the same"); Busby v. Dretke, 359 F.3d 708,

8    720 (5th Cir. 2004) (noting that although the question of procedural default should ordinarily be

9    considered first, a reviewing court need not do so invariably, especially when the issue turns on

10   difficult questions of state law).  Thus, where deciding the merits of a claim proves to be less

11   complicated and time-consuming than adjudicating the issue of procedural default, a court may

12   exercise discretion in its management of the case to reject the claim on its merits and forgo an

13   analysis of procedural default.  See Batchelor v. Cupp, 693 F.2d 859, 864 (9th Cir. 1982)

14   (procedural default issues "are almost always more complicated and time consuming than are the

15   merits of the petitioner's federal claim").

16          Under the circumstances presented here, this court finds that petitioner's claims of error in

17   the admission of evidence can be resolved more easily by addressing them on the merits.

18   Accordingly, the court will assume that the claims are not subject to a procedural default.

19                      **3. Applicable Law and Analysis**

20          A federal writ of habeas corpus will be granted for an erroneous admission of evidence

21   "only where the 'testimony is almost entirely unreliable and . . . the factfinder and the adversary

22   system will not be competent to uncover, recognize, and take due account of its shortcomings.'"

23   Mancuso v. Olivarez, 292 F.3d 939, 956 (9th Cir. 2002) (quoting Barefoot v. Estelle, 463 U.S.

24   880, 899 (1983)).  Evidence violates due process only if "there are no permissible inferences the

25   jury may draw from the evidence."  Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).

26   Evidence must "be of such quality as necessarily prevents a fair trial" for its admission to violate

27   due process  Id. (quoting Kealohapauole v. Shimoda, 800 F.2d 1463, 1465 (9th Cir. 1986)).

28   /////

1    Notwithstanding the above, the Ninth Circuit has observed that:

2         The Supreme Court has made very few rulings regarding the
          admission of evidence as a violation of due process.  Although the
3         Court has been clear that a writ should be issued when
          constitutional errors have rendered the trial fundamentally unfair
4         (citation omitted), it has not yet made a clear ruling that admission
          of irrelevant or overtly prejudicial evidence constitutes a due
5         process violation sufficient to warrant issuance of the writ

6    Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009).  Therefore, "under AEDPA, even

7    clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit

8    the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as

9    laid out by the Supreme Court."  Id.

10        Pursuant to these binding authorities, the state appellate court's rejection of petitioner's

11   due process claim here does not support the granting of federal habeas relief under AEDPA

12   because a California trial court's admission of evidence pursuant to California Evidence Code §

13   1109 to show propensity does not violate any principle of clearly established federal law.  Id.

14        In addition, the United States Supreme Court "has never expressly held that it violates due

15   process to admit other crimes evidence for the purpose of showing conduct in conformity

16   therewith, or that it violates due process to admit other crimes evidence for other purposes

17   without an instruction limiting the jury's consideration of the evidence to such purposes."

18   Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001), overruled on other grounds by

19   Woodford v. Garceau, 538 U.S. 202 (2003).  In fact, the Supreme Court has expressly left open

20   this question.  See Estelle v. McGuire, 502 U.S. at 75 n.5 ("Because we need not reach the issue,

21   we express no opinion on whether a state law would violate the Due Process Clause if it permitted

22   the use of 'prior crimes' evidence to show propensity to commit a charged crime"); see also

23   Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008) (holding that the state court's determination,

24   that the propensity evidence introduced against the defendant at trial did not violate his right to

25   due process, was not objectively unreasonable); Alberni v. McDaniel, 458 F.3d 860, 863-67 (9th

26   Cir. 2006) (denying the petitioner's claim that the introduction of propensity evidence violated his

27   due process rights under the Fourteenth Amendment because "the right [petitioner] asserts has not

28   been clearly established by the Supreme Court, as required by AEDPA"); United States v.

22

1  LeMay, 260 F.3d 1018, 1024-27 (9th Cir. 2001) (Fed. R. Evid. 414, permitting admission of

2  evidence of similar crimes in child molestation cases, under which the test for balancing probative

3  value and prejudicial effect remains applicable, does not violate the due process clause).

4  Accordingly, the state court's rejection of petitioner's contention that the admission of the

5  challenged evidence violated his right to due process is not contrary to clearly established United

6  States Supreme Court authority.  See 28 U.S.C. § 2254(d).

7         Further, any error in admitting this challenged evidence did not have "a substantial and

8  injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S.

9  619, 637 (1993).  See also Penry v. Johnson, 532 U.S. 782, 793-96 (2001).  The record reflects

10 that the state trial judge struck an appropriate balance between petitioner's rights and the clear

11 intent of the California legislature that evidence of prior similar acts be admitted in domestic

12 violence prosecutions.  The trial court held a hearing on the admissibility of petitioner's prior acts

13 of domestic violence and concluded that evidence regarding three out of the four disputed

14 incidents was relevant and that its admission was appropriate under California law.  The trial

15 court specifically concluded that the evidence with regard to those three incidents was not unduly

16 prejudicial.  Nagy, 2011 WL 2848649, at *8; Reporter's Transcript on Appeal (RT) at 80.

17        In addition, the jury at petitioner's trial was instructed at the close of the evidence that if

18 they found petitioner had committed the uncharged act of domestic violence they could, but were

19 not required to, infer that he had a disposition to engage in domestic violence and that he was

20 likely to have committed the charged offenses.  Clerk's Transcript on Appeal (CT) at 499.  These

21 instructions did not compel the jury to draw an inference of propensity; they simply allowed it.

22 Finally, the jury was directed that evidence that petitioner committed prior domestic violence was

23 not sufficient by itself to prove that he was guilty of the charged offenses.  Id.  In addition, the

24 jury instructions correctly informed petitioner's jury that the prosecution had the burden of

25 proving all elements of the crimes against petitioner beyond a reasonable doubt.  See e.g., id. at

26 477, 499.  Although the prior crimes evidence was potentially powerful, "[the fact] that prior acts

27 evidence is inflammatory is not dispositive in and of itself."  LeMay, 260 F.3d at 1030.

28 /////

23

1    The admission of petitioner's prior acts of domestic violence did not violate any right

2 clearly established by federal precedent or result in prejudice under the circumstances of this case.

3 Accordingly, petitioner is not entitled to federal habeas relief with respect to his due process

4 claim based upon the alleged improper admission of evidence regarding his prior acts of domestic

5 violence.

6    Petitioner also claims the introduction of his prior acts of domestic violence pursuant to

7 California Evidence Code § 1109 violated his rights under the Equal Protection Clause.  The

8 Equal Protection Clause "embodies a general rule that States must treat like cases alike but may

9 treat unlike cases accordingly." Vacco v. Quill, 521 U.S. 793, 799 (1997) (citing Plyler v. Doe,

10 457 U.S. 202, 216 (1982) and Tigner v. Texas, 310 U.S. 141, 147 (1940)).  The Fourteenth

11 Amendment "guarantees equal laws, not equal results." McQueary v. Blodgett, 924 F.2d 829,

12 835 (9th Cir. 1991) (quoting Personnel Adm'r v. Feeney, 442 U.S. 256, 273 (1979)).

13 "[L]egislation may impose special burdens upon defined classes in order to achieve permissible

14 ends." Estelle v. Dorrough, 420 U.S. 534, 539 (1975).  However, the Equal Protection Clause

15 "does require that, in defining a class subject to legislation, the distinctions that are drawn have

16 'some relevance to the purpose for which the classification is made.'" Id.  A habeas petitioner

17 has the burden of alleging facts sufficient to establish "a prima facie case of uneven application."

18 McQueary, 924 F.2d at 835.  "[A] mere demonstration of inequality is not enough . . . There must

19 be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim

20 arises." Id.

21    In LeMay, the Ninth Circuit held that Federal Rule of Evidence 414 (allowing evidence of

22 similar crimes in child-molestation cases) did not violate the Equal Protection Clause because it

23 did not discriminate against any group of individuals on the basis of a suspect or quasi-suspect

24 class and did not infringe on a fundamental right. 260 F.3d at 1030 (defendants have "no

25 fundamental right to have a trial free from relevant propensity evidence that is not unduly

26 prejudicial").  Thus, according to the Ninth Circuit, the rule was constitutional so long as it bore a

27 "reasonable relationship to a legitimate government interest." Id. at 1031.  The court observed

28 that Rule 414 allowed prosecutors to introduce relevant evidence in furtherance of the legitimate

24

1   government interest of prosecuting and convicting sex offenders.  Id.  On this basis the court

2   found the equal protection challenge to Rule 414 to be without merit.  Id.

3          Just as the class of sex offenders was considered not a suspect class in LeMay, the class of

4   domestic batterers is not a suspect class here.  Further, California Evidence Code § 1109 does not

5   infringe on a fundamental right because petitioner has no fundamental right to a trial free from

6   relevant propensity evidence that is not unduly prejudicial.  See LeMay, 260 F.3d at 1030.  In

7   addition, California Evidence Code § 1109 bears a reasonable relationship to the legitimate

8   government interest in the effective prosecution of domestic violence.  See id. at 1031.

9          Petitioner has not demonstrated that the state court decision rejecting his equal protection

10   challenge to § 1109 was contrary to or an unreasonable application of federal law.  Accordingly,

11   he is not entitled to habeas relief on that claim.[6]

12         **D.  Prosecutorial Misconduct**

13          In his next ground for relief, petitioner claims that the prosecutor committed misconduct

14   in allowing Dunn to testify to a prior act of domestic violence that had not previously been

15   disclosed to defense counsel.  ECF No. 1 at consecutive p. 7; ECF No. 42 at 19.  He argues the

16   admission of this evidence violated his right to a fair trial because it was more inflammatory than

17   the conduct for which he was on trial and that it was not harmless because Dunn simply

18   fabricated the incident and her testimony was not credible.  ECF No. 42 at 21.

19          This claim was raised on direct appeal but not in petitioner's petition for review.

20   Accordingly, it is unexhausted.  However, notwithstanding petitioner's failure to exhaust, the

21   court will deny this claim on the merits.  28 U.S.C. § 2254(b)(2).

22         **1.  State Court Decision**

23          The California Court of Appeal rejected petitioner's arguments in this regard, reasoning as

24   follows:

25   /////

26   _____

27   [6]   In the traverse, petitioner claims that the admission of this evidence violated California Evidence Code § 352 because it was substantially more prejudicial than probative.  ECF No. 42 at 15-17.  This claim is based on state law and is therefore not cognizable in this federal habeas

28   proceeding.  Wilson, 562 U.S. at 5.

## C. Defendant's Prosecutorial Misconduct Claim

In addition to the prior instances of domestic violence that the trial court allowed pursuant to the prosecution's motion in limine, Dunn testified to an incident that occurred on February 8, 2008.  She testified that defendant came home in the early morning hours, they fought, and he stripped her, beat her black and blue, pulled out her hair, bit her, and choked her.  These were the injuries noticed by the nurse at Dunn's pregnancy exam on February 19.  The prosecutor's in limine motion did not include any incident on February 8, 2008.  However, except for a hearsay objection and an objection that no question was pending defendant's trial counsel raised no objection to Dunn's testimony regarding the February 8, 2008 incident.

Later, however, defense counsel filed a motion for new trial, in which he argued that the prosecutor's questions invited a violation of the court's limitation on the use of prior domestic violence evidence.  The trial court made the following findings in ruling on the motion:

> "First point the defense raises, which is the prejudice on this February 8 incident that that information did result in lack of a fair trial to Mr. Nagy here, you have to look at the context of the whole case.  This is a relationship that had gone on for some time between Mr. Nagy and his wife Ms. Dunn.  They had a young boy, four weeks old.  A volatile relationship with a lot of difficult issues between the two of them.  Ms. Dunn did testify about a number of incidents.  We did use 1109 evidence.  We did instruct them under CALCRIM 852.  We talked about other incidents, I believe on January 30th, on February 1, February 19, and somehow traipsed into February 8.  I don't find any misconduct by the People or the defense with regard to her testimony on that.
>
> I do believe, a big issue here, was Ms. Dunn, the February 8 incident was one piece of a puzzle, but I don't think a significant piece given the range of the relationship and the testimony about the troubled relationship they had.
>
> What I will find, even if there is some prejudice from the February 8 incident, it's of a minor manner and an insufficient basis for a new trial when you look at all the evidence in the case and the issues between the parties, basically the credibility of Ms. Dunn and other witnesses for that example, but primarily Ms. Dunn because she's the main victim."

To the extent defendant's argument is that the prosecutor committed misconduct, the claim is not reviewable because there was no timely objection at trial and request for an admonition.  (People v. Price (1991) 1 Cal.4th 324, 447.)  In any event, we agree with the trial court that any error was harmless under any standard of review.

1
2
3
4
5

> There was other evidence of defendant's abuse against Dunn, and defendant conceded to the introduction of evidence regarding the injuries Dunn sustained on the challenged occasion.  Evidence that defendant perpetrated the injuries on Dunn in this case were overwhelming.  Both Dunn and the eyewitness Cobarrubias named defendant as the culprit.  Several other instances of defendant's prior violence against Dunn were properly admitted.  Evidence of one more instance of defendant's prior violence toward Dunn was therefore harmless.

6   Nagy, 2011 WL 2848649, at *9–10.

7           **2. Analysis**

8           Assuming this claim is not subject to a procedural default as a result of the failure of

9   petitioner's trial counsel to object to the challenged evidence, the claim should be denied.  The

10  California Court of Appeal concluded that even if the prosecutor committed misconduct, any

11  error was harmless because the evidence of an additional incidence of domestic violence was

12  simply cumulative of other evidence of the same.  This court agrees.  As explained by the state

13  appellate court, there was significant other evidence of defendant's abuse against Dunn and the

14  volatility of their relationship; the evidence that defendant perpetrated the injuries on Dunn in this

15  case was overwhelming; and other examples of petitioner's prior domestic violence against Dunn

16  were properly admitted into evidence.  In light of this, evidence of one more example of domestic

17  violence would not have had a substantial and injurious effect on the verdict in this case.  See

18  Brecht, 507 U.S. at 637.  The conclusion of the California Court of Appeal to the same effect is

19  not objectively unreasonable.  See Towery v. Schriro, 641 F.3d 300, 307 (9th Cir. 2010) ("When

20  a state court has found a constitutional error to be harmless beyond a reasonable doubt, a federal

21  court may not grant habeas relief unless the state court's determination is objectively

22  unreasonable").  Accordingly, petitioner is not entitled to relief on his claim of prosecutorial

23  misconduct.

24          To the extent petitioner is arguing the prosecutor violated the California Evidence Code in

25  failing to disclose the February 8 incident to the defense, or in failing to advise Dunn not to

26  mention that incident, his claim is not cognizable in this federal habeas corpus action.  Wilson,

27  562 U.S. at 5.

28  /////

27

1      **E.  Erroneous Admission of "Voluminous" Hearsay**

2           In his next ground for relief, petitioner claims that the trial court violated his right to a fair

3    trial when it admitted cumulative testimony from four different witnesses describing Dunn's

4    account of petitioner's attack against her.  ECF No. 1 at consecutive p. 7.  He argues this

5    testimony "impermissibly bolstered [Dunn's] credibility."  ECF No. 42 at 22.  This claim was

6    raised on direct appeal and in the petition for review.  Accordingly, it is exhausted.  <u>Casey</u>, 386

7    F.3d at 916.

8                              **1.  State Court Decision**

9           The California Court of Appeal denied this claim, reasoning as follows:

10           **Hearsay**

11           Defendant objects, as he did at trial, to the admission of certain
12      hearsay evidence.  The claimed hearsay involved statements of
        Dunn to four separate individuals.  Defendant argues he was
13      prejudiced because the repetition of Dunn's account of the attack
        through the testimony of other witnesses, three of whom were law
14      enforcement representatives, lent a false aura of credibility to her
        testimony.  We shall examine each witness separately.

15           **A. Dunn's Statement to Officer High**

16           High arrived at Dunn's residence at 8:26 a.m., within minutes of the
        attack.  He testified he made contact with Dunn and observed her
17      injuries.  Over a hearsay objection, High testified that Dunn stated
        defendant caused her injuries and that defendant had been arrested
18      for domestic violence a few months earlier.  He recounted in detail
        Dunn's statement to him regarding the circumstances of the crime.
19
        The trial court allowed the testimony over the hearsay objection on
20      the grounds it was a spontaneous statement, it was a fresh
        complaint, and because it corroborated Dunn's testimony.  We
21      conclude the statement was properly admitted as a spontaneous
        statement and for corroboration of Dunn's testimony.
22
        Evidence Code section 1240 provides: "Evidence of a statement is
23      not made inadmissible by the hearsay rule if the statement: [¶] (a)
        Purports to narrate, describe, or explain an act, condition, or event
24      perceived by the declarant; and [¶] (b) Was made spontaneously
        while the declarant was under the stress of excitement caused by
25      such perception."  The crucial factor in determining whether a
        statement falls within this exception is the mental state of the
26      speaker.  (<u>People v. Farmer</u> (1989) 47 Cal.3d 888, 903, <u>disapproved
        on other grounds</u> by <u>People v. Waidla</u> (2000) 22 Cal.4th 690, 724,
27      fn. 6.)  The nature of the statement and how long it was made after
        the incident are important solely as indicators of the mental state of
28      the declarant.  (<u>Id.</u> at pp. 903–904.)

                                      28

In this case, High arrived on the scene within minutes of the attack. Dunn was badly injured, and High testified that she was "very upset" initially and had been crying.  Only after he spoke with her did she calm down enough for him to find out what had happened. Despite her injuries, she had no trouble recalling events, and identified defendant as the person who had caused them.  Dunn's identification of defendant at the scene as the perpetrator of the beating undoubtedly qualifies as a spontaneous statement.

Dunn requested an ambulance when the police arrived.  After the ambulance took Dunn to the hospital, High spoke with her at the hospital, where he took a full statement.  Although it is unclear whether that statement was made in response to questioning, that fact would not necessarily deprive the statement of spontaneity. (People v. Farmer, supra, 47 Cal.3d at p. 904.)  Detailed questioning may deprive the response of the requisite spontaneity, but each fact pattern must be considered on its own merits.  (Ibid.) Again, it is not clear from the record to what extent Dunn's statement was made in response to questioning.

The trial court is vested with reasonable discretion in determining whether a particular statement is a spontaneous declaration. (People v. Saracoglu (2007) 152 Cal.App.4th 1584, 1588–1589.) Under the circumstances here, where the victim was in pain from her injuries, where she had very recently been the victim of a severe beating, and where there is no evidence in the record that the statement was made as a result of extensive questioning, the trial court did not abuse its discretion in admitting the statement as a spontaneous declaration.

The statement was also admissible under Evidence Code section 791, which provides that evidence of a witness's prior consistent statement is admissible to support credibility if: "An express or implied charge has been made that his testimony at the hearing is recently fabricated or is influenced by bias or other improper motive, and the statement was made before the bias, motive for fabrication, or other improper motive is alleged to have arisen." (Id. at subd. (b).)

Dunn testified on cross examination that after she left the hospital after the incident, the police brought her son to the hospital. Because she was not there, her son was taken by Child Protective Services (CPS), in whose custody he remained at the time of trial. Defense counsel proceeded to imply through his questions that Dunn's testimony was fabricated in order to get her son back.  The statement to High, made before her son was taken away, was thus admissible to rebut the implication that her trial testimony was fabricated in order to get her son back.[7]

---

[7]   The People concede that the testimony by High about a statement made to him was inadmissible as a fresh complaint, since that doctrine allows the extrajudicial statement only in a criminal prosecution for a sexual offense, and only for the nonhearsay purpose of forestalling the inference that no assault occurred since no complaint was made.

The court did not abuse its discretion in admitting hearsay evidence through the testimony of Officer High.

**B. Dunn's Statement to Dr. Cordray**

Defendant objects to testimony by Dr. Cordray relating what Dunn said to him when she was being seen in the emergency room after the attack.  When asked how Dunn stated her injuries had occurred, Cordray responded, "She told me her husband had just gotten out of prison and came home and assaulted her . . . .  She said with fists."

The trial court admitted the testimony under the spontaneous statement exception to the hearsay rule.  We conclude the trial court did not abuse its discretion in admitting the testimony.   The statement was made shortly after the attack, at approximately 9:00 a.m.  The doctor described significant trauma, from which the trial court could have inferred Dunn was experiencing enough pain to make it unlikely that she would fabricate a story for the doctor treating her.  The trial court did not abuse its discretion in admitting the testimony under the spontaneous statement exception to the hearsay rule.

Like the testimony of Officer High, the doctor's testimony was also admissible as a prior consistent statement, since Dunn's son had not been taken away from her at the time she made the statement.  The court did not abuse its discretion in admitting the testimony under the prior consistent statement exception to the hearsay rule.

**C. Testimony of Parole Agent Wiggins**

Dexter Wiggins was defendant's parole agent.  Dunn went to his office around 1:30 in the afternoon after the attack.   Wiggins testified that Dunn was crying, and appeared "upset," "scared," and "broken down."   Wiggins testified over objection that Dunn told him defendant had beat her for about an hour and said he was going to kill her.   She told him all her injuries came from defendant beating her, and that she had a broken hand from trying to shield her face.

The trial court admitted agent Wiggins's testimony under the same three exceptions to the hearsay rule.   Wiggins's testimony was admissible under Evidence Code section 791, as a prior consistent statement.  Dunn's report to Wiggins occurred before she found out her son had been taken by CPS.  She thus made the statement prior to having that motive to lie.  "A prior consistent statement logically bolsters a witness's credibility whenever it predates any motive to lie, not just when it predates all possible motives.  Accordingly, under Evidence Code section 791, 'a prior consistent statement is admissible as long as the statement is made before the existence of any one of the motives that the opposing party expressly or impliedly suggests may have influenced the witness's testimony.' [Citation.]"  (<u>People v. Hillhouse</u> (2002) 27 Cal.4th 469, 492.)  The statement was properly admitted.

/////

**D. Testimony of Investigator Mitchell**

> Peggy Mitchell, an investigator for the district attorney, testified that she interviewed Dunn on June 11, 2008.  Dunn would not talk to her at first because she was afraid of making defendant angry.  Eventually, she told Mitchell that defendant had her throat in one hand and a screwdriver in the other hand while he threatened to rip out her throat.  He told her he would kill her if she did not stop screaming for Cobarrubias to help her.  Dunn stated defendant was angry with her for not bailing him out when he was in jail.  Mitchell testified to these statements without objection by defense counsel.[8]  A timely objection is required to preserve a claim of error in the admission of evidence.  (People v. Pollock (2004) 32 Cal.4th 1153, 1181; Evid.Code, § 353.)  Defendant's claim of error with respect to the admission of Dunn's statement through the testimony of Mitchell is forfeited.

Nagy, 2011 WL 2848649, at *10–13.

**2. Analysis**

As set forth above, a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process, if the challenged evidence is "almost entirely unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings," and where "there are no permissible inferences the jury may draw from the evidence,"  Estelle, 502 U.S. at 68-70; Mancuso, 292 F.3d at 956; Jammal, 926 F.2d at 920.  Petitioner has failed to meet these tests.  The testimony of Officer High, Dr. Cordray, parole agent Wiggins, and investigator Mitchell was not unreliable, it was admissible to bolster Dunn's credibility, and it did not "necessarily" prevent a fair trial.  In addition, the state appellate court's rejection of petitioner's due process claim here does not support the granting of federal habeas relief under AEDPA because a California trial court's admission of evidence from these four witnesses does not violate any principle of clearly established federal law.  Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009).  Accordingly, petitioner is not entitled to habeas relief on this claim.

/////

---

[8]  Defense counsel made a hearsay objection when the prosecutor questioned Mitchell about statements Cobarrubias made to her, but no objection to the statements of Dunn.

31

The state appellate court's conclusion that the testimony of these four witnesses met the requirements for admissibility under California law is binding on this court.  See Estelle, 502 U.S. at 67-68 (a federal writ is not available for alleged error in the interpretation or application of state law); Rhoades v. Henry, 638 F.3d 1027, 1034, n.5 (9th Cir. 2011) ("[E]videntiary rulings based on state law cannot form an independent basis for habeas relief."); Jammal, 926 F.2d at 919-20 (petitioner may not challenge evidentiary ruling on ground that it violated states's evidence code; failure to comply with state rules of evidence does not warrant federal habeas relief); Aponte v. Gomez, 993 F.2d 705, 707 (9th Cir. 1993) (federal courts are "bound by a state court's construction of its own penal statutes"); Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989) (a federal habeas court must defer to the state court's construction of its own penal code unless its interpretation is "untenable or amounts to a subterfuge to avoid federal review of a constitutional violation").  Accordingly, petitioner's arguments regarding the trial court's failure to comply with the requirements of the California Evidence code should also be rejected.

**F.  Violation of Right to Fair Trial Because of Outbursts from the Victim**

In his next ground for relief, petitioner claims that outbursts by Dunn on the witness stand violated his right to a fair trial.  ECF No. 1 at consecutive p. 7.  He explains:

> The witness sat on the stand making obscene comments through out the questioning about how I am an awfull person.  Arguing and yelling at my attorney how I need to be prosecuted.  How I fought with her many many many times.  During trial the Judge admonished her 26 times.  The trial court failed to adequately control the witness in front of the jury and with witnesses outbursts throughout trial painted an ugly picture of myself to the jury.

Id.

In the traverse, petitioner claims that: (1) the prosecutor's questions to Dunn "invited a violation" of the trial court's limitation on the admission of evidence of prior domestic violence; and (2) the prosecutor's questions regarding "drug use and infidelity" were "irrelevant and prejudicial."  ECF No. 42 at 27-28.  Petitioner argues Dunn's testimony unfairly portrayed him as "a person who continuously physically abused her, used drugs and cheated on her throughout their relationship," and violated his right to a fair trial.  Id. at 28.  He argues that "both the trial court and the prosecutor failed in their obligations to insure appellant's right to a fair trial."  Id.

Petitioner points to numerous points in the trial transcript where the trial judge admonished Dunn to answer the question being asked and told her not to answer in narrative form, or advised her not to editorialize, offer her opinion, argue with the questioner, or interrupt.  He also points to instances where Dunn inserted personal comments, questioned the relevance of questions put to her, or became argumentative with the prosecutor.  As an example, at one point Dunn stated that petitioner "needs to be prosecuted for what he's done."  RT at 696.  The California Court of Appeal recited several other instances of Dunn's outbursts in its opinion, as set forth below.

Petitioner's claims in this regard were raised on direct appeal and in the petition for review.  Accordingly, they are exhausted.  Casey, 386 F.3d at 916.

### 1. State Court Decision

The California Court of Appeal denied petitioner's claims challenging Dunn's testimony, reasoning as follows:

#### Fair Trial

> Dunn was a difficult, obstreperous witness.  She repeatedly editorialized and, as defendant's trial counsel noted, made "a speech after every question."  As defense counsel also noted, the trial court "admonished her repeatedly[.]"  For example, defense counsel was cross-examining Dunn regarding her preliminary hearing testimony, at which time she had been questioned about hitting defendant.  She interjected: "So are you trying to say I deserve being beat up the next morning?  Is that what we are getting at?"  The trial court admonished: "You and I talked about that.  Let's not make a beef.  Answer the question.  They'll pose a question, you answer it.  We have two advocates, I don't need a third."

> Later, Dunn said to defense counsel: "You guys are trying to trick me into saying something that didn't happen."  The court told her to "[j]ust . . . focus on the question."  Dunn then said, "That is your job, I guess."  Defense counsel objected and the trial court admonished: "Ms. Dunn, I don't want to get difficult.  Keep your opinions to yourself."

> Still later defense counsel asked Dunn, "So the cab driver left without ever asking you for the money that you owed him?"  Dunn responded, "That's correct.  What kind of story is he telling you?"  The court said, "Ma'am, again, you're not the one asking questions."  Dunn replied, "I want to know."  The court told her, "Let's stay away from that.  I need you to rely on your memory . . . ."

> During his cross-examination of Dunn, defense counsel asked that the trial court admonish her outside the presence of the jury.  The

trial court responded that it had done so every time Dunn had testified, but that it would do so again.  The trial court then spoke to Dunn outside the presence of the jury, at which time the following conversation took place.

"[THE COURT:] Ms. Dunn, I keep reminding you, I will reiterate it, it will go a lot better, meaning they'll get their question, you'll get your answer if you focus on the question and don't argue.  Don't argue.

THE WITNESS: I'm sorry.  I have a touch of Turret's.

THE COURT: Keep it under control.  I need you to focus on the question, the same as you did with [the prosecutor].  I have to keep an even keel to each side.  I can't let the witness take the stand, give a personal speech how they don't like or hate someone.  I can't do that.  Can't allow it.  They will ask you the questions.  When they are done, they'll have follow-up.  [¶] Focus on the question, answer to the best of your ability.  [¶] Nobody is saying this is easy.  We need your best memory."

After his conviction, defendant made a motion for a new trial on the ground, inter alia, that Dunn's outbursts denied him his right to a fair trial.  In denying the motion, the trial court found:

"Defense argues she was an inflammatory witness, she was prone to outbursts.  We saw her.  Okay.  I did admonish her a number of times.  She was a volatile, emotional witness.  Again, those things happen more often than not in domestic violence cases because we have issues of relationships that we don't have in the average burglary, robbery, or petty theft case.  There is a lot of emotion here, goes back over time.  Kids are often involved.

In a case like this everybody can expect there will be a high level of emotions.  Hers was unusually high.

Defense had the argument that Ms. Dunn was in fact not a candid person, lying is a fair term or neutral term, that she was being less than candid with her comments here.  I believe given the examination by the People and by the defense all of her issues of credibility were fairly put in front of the jury and that did include her emotionality.  I thought it favored the defense in this case, but personal opinion is not what we are here for.

Given a review of her testimony and remembering her testimony, I'm going to find it is not a sufficient basis for a new trial.  It put her accurately in setting, a person recovering, did have significant drug, alcohol, and personal behavior problems.  That is the witness.  That is how she testified.  And the jury made a decision with a full view of this lady's past and present."

Defendant now argues that the trial court erred in failing to adequately control Dunn's outbursts, and the prosecutor committed misconduct by failing to control its witness.  He also argues the trial court abused its discretion by denying his motion for a new trial.  He has forfeited any claim of prosecutorial misconduct by failing to raise a timely objection on this ground.  (People v. Foster (2010) 50 Cal.4th 1301, 1350.)

We find no error in the trial court's handling of Dunn as a witness.  The trial court has the duty to control the proceedings during trial "with a view to the expeditious and effective ascertainment of the truth regarding the matters involved." (§ 1044 .)  The trial court's conduct of the trial is a matter within its discretion, and its determinations in the conduct of the trial must be upheld on appeal absent patent abuse.   (People v. Schwartzman (1968) 266 Cal.App.2d 870, 890.)

The People, as well as the defendant, have the right to receive a fair trial.  (People v. Williams (2009) 170 Cal.App.4th 587, 615.)  In this case the victim's testimony was essential to the People's case.  The trial court repeatedly admonished Dunn, both outside and within the jury's presence.  It is unclear that the trial court could have done more than it did and still allowed the People to present the testimony of the victim.

Defendant does not explain in what way Dunn's outbursts prejudiced him, other than to say she created a "toxic atmosphere."  Having reviewed the transcript, we agree with the trial court that Dunn's outbursts undoubtedly harmed her credibility more than they placed defendant in a bad light.  Dunn's credibility was central to the case.  Her emotional outbursts did not result in the admission of inadmissible evidence, but they did serve to put Dunn's own credibility and objectivity in doubt.  Under the circumstances, any error in failing to control Dunn was harmless beyond a reasonable doubt.

Nagy, 2011 WL 2848649, at *13–15.

## 2.  Applicable Law

"[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors.  Irvin v. Dowd, 366 U.S. 717, 728 (1961).  The failure to accord an accused a fair hearing violates even the minimal standards of due process."  Id. at 722.  "Upon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused."  Glasser v. United States, 315 U.S. 60, 71 (1942), overruled on other grounds by Bourjaily v. United States, 483 U.S. 171 (1987).  A trial court must "look at the scene presented to jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial . . . ."  Norris v. Risley, 878 F.2d 1178, 1182

1   (9th Cir. 1989) (quoting Holbrook v. Flynn, 475 U.S. 560, 572 (1986)).  Pursuant to California

2   law, "It shall be the duty of the judge to control all proceedings during the trial, and to limit the

3   introduction of evidence and the argument of counsel to relevant and material matters, with a

4   view to the expeditious and effective ascertainment of the truth regarding the matters involved."

5   Cal. Penal Code § 1044.

6          A criminal defendant's due process rights are violated when a prosecutor's misconduct

7   renders a trial fundamentally unfair.  Darden v. Wainwright, 477 U.S. 168, 181 (1986).  Claims of

8   prosecutorial misconduct are reviewed "'on the merits, examining the entire proceedings to

9   determine whether the prosecutor's [actions] so infected the trial with unfairness as to make the

10   resulting conviction a denial of due process.'"  Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir.

11   1995) (citation omitted).  See also Greer v. Miller, 483 U.S. 756, 765 (1987); Donnelly v.

12   DeChristoforo, 416 U.S. 637, 643 (1974); Towery v. Schriro, 641 F.3d 300, 306 (9th Cir. 2010).

13   When prosecutorial conduct is called in question, the issue is whether, considered in the context

14   of the entire trial, that conduct appears likely to have affected the jury's discharge of its duty to

15   judge the evidence fairly.  United States v. Young, 470 U.S. 1, 11 (1985).

16              **3.  Analysis**

17          This court agrees with the state trial court that Dunn's outbursts did not have a substantial

18   adverse effect on the fairness of petitioner's trial.  As explained by the trial judge in his ruling on

19   petitioner's motion for new trial, the primary result of Dunn's behavior was to harm her own

20   credibility.  The trial judge, who had actually observed Dunn's testimony, was in the best position

21   to determine the impact of her volatility on the jurors.  Further, most of Dunn's outbursts did not

22   concern petitioner, but were focused on whether she was being "railroaded" by the prosecutor.  It

23   was obvious that Dunn was angry at petitioner and wished to see him punished, but there is no

24   evidence Dunn's testimony or behavior precluded the jury from reaching an unbiased verdict.

25          In any event, this court has reviewed Dunn's testimony and does not find that her

26   outbursts rendered petitioner's trial fundamentally unfair.  Although Dunn did make several

27   gratuitous negative comments and allegations about petitioner, they did not outweigh the

28   substantial evidence of petitioner's guilt of the charged crimes.  It was clear that Dunn was still

1    angry at petitioner but for the most part her answers were responsive to the prosecutor's

2    questions.  The judge repeatedly reminded Dunn to answer the question being asked and not to

3    volunteer.  The trial court reminded Dunn at every appropriate occasion that she needed to focus

4    on the question being asked.  There is no evidence the trial judge failed to adequately control

5    Dunn or that the proceedings spiraled out of control to the point that petitioner did not receive a

6    fair trial.  There is also no evidence that the prosecutor's actions were improper or inappropriate

7    or that they contributed to an unfair result.  A review of the record reflects that both the trial judge

8    and the prosecutor appropriately handled a difficult witness who was critical to providing relevant

9    evidence to support the charges against petitioner.

10           The decision of the California Court of Appeal rejecting this claim is not contrary to or an

11   unreasonable application of established United States Supreme Court authority.  Accordingly,

12   petitioner is not entitled to federal habeas relief.

13           **G. Denial of Motions for Substitute Counsel**

14           In his next ground for relief, petitioner claims that the trial court violated his federal

15   constitutional rights in denying his three motions for substitute counsel.  ECF No. 1 at

16   consecutive p. 7.  He states that his attorney would not interview him, failed to secure witnesses,

17   and yelled at him.  Id.  Petitioner also alleges that he and his attorney "did not even talk through

18   out the whole trial," that there was an "incurable conflict," and that his trial attorney lied to him

19   "many times."  Id.  Petitioner also claims he and his trial counsel "ended up in shouting matches

20   every encounter."  Id.  In the traverse, petitioner argues that his trial counsel failed to

21   communicate with him or visit him in prison, forced him to "waive time and agree to

22   continuances of the trial" because counsel was unprepared, failed to locate an important witness,

23   was only interested in discussing the entry of a plea because he did not believe petitioner's

24   defense would succeed, and told petitioner that he had "beaten Dunn so badly she was bleeding

25   from the ears."  ECF No. 42 at 42-43.

26           Petitioner raised this claim on direct appeal and in his petition for review.  Accordingly, it

27   is exhausted.  Casey, 386 F.3d at 916.

28   /////

## 1. State Court Decision

The California Court of Appeal denied these claims, reasoning as follows:

### Marsden Motions

Defendant argues he was denied the effective assistance of counsel by the denial of his three <u>Marsden</u> motions.[9]

### A. April 9, 2009 Motion

At the first motion, defendant complained that his attorney had been to see him only once, and that on that occasion, the conversation primarily had been about whether he should accept a plea offer. He expressed that there were a number of witnesses he wanted interviewed, and that his attorney had not interviewed anyone, even the victim.

Defendant's attorney explained that he had seen defendant only once because defendant was not transported for the three court dates that had been set, and when the attorney went to Duel Vocational Institute (DVI) to see defendant, he discovered defendant was not there. For a period of time, the attorney was not sure where defendant was being housed. Defendant waived time, and the trial date was continued. The attorney planned to wait until defendant was returned to DVI to visit him. However, defendant was not returned to DVI for some time. He was not returned to San Joaquin County until March, 2009, at which point the attorney went to visit him.

During the visit they went over the crime reports and the preliminary hearing. Defendant spent an hour telling his attorney exactly what had happened during the incident with Dunn. When his attorney indicated there would be some problems with that account, defendant said, "Okay, fine, then I wasn't there at all. And you can contact these witnesses and they will tell you that I wasn't there at all." Defendant's attorney told him that in light of defendant's desire to change his defense strategy, they would need more time to prepare the defense.

The trial court denied the <u>Marsden</u> motion, finding the delay and the attorney's actions reasonable since there was a change in the defendant's approach to the case.

A criminal defendant is entitled to substitution of counsel ""'if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citations]." [Citations].'" (<u>People v. Hart</u> (1999) 20 Cal.4th 546, 603.) Substitution is a matter for the trial court's discretion, which discretion is not abused unless the defendant shows that failure to

---

[9] <u>People v. Marsden</u> (1970) 2 Cal.3d 118.

replace counsel would substantially impair the defendant's right to assistance of counsel.  (Ibid.)

No abuse of discretion appears from the denial of defendant's first Marsden motion.  Defendant made no claim in that motion that he had become embroiled in an irreconcilable conflict with his attorney.  Defendant's concern was that his attorney had not visited him enough, had not interviewed witnesses, and only wanted to impress upon defendant how much prison time he was facing from the charges.

Defendant's attorney explained his inability or failure to see defendant more often, as well as his failure to interview witnesses. He assured defendant and the court that he was able to represent defendant, but thought it was part of his job to advise defendant if a proposed defense strategy did not have a reasonable likelihood of succeeding with a jury.

As to counsel's failure to visit defendant more often and his insistence on reminding defendant of the penalty for the charges he was facing, "the number of times one sees his attorney, and the way in which one relates with his attorney, does not sufficiently establish incompetence."  (People v. Silva (1988) 45 Cal.3d 604, 622.)   The trial court found defendant's failure to interview witnesses reasonable in light of defendant's change in strategy. This was not an abuse of discretion because there was no showing the failure to replace counsel "'would "substantially impair" the defendant's right to assistance of counsel.' [Citations.]"  (People v. Hart, supra, 20 Cal.4th at p. 603.)

**B. June 2, 2009 Motion**

Defendant claimed in his second Marsden motion that he and his attorney were not getting along, and had a conflict of interest. When the trial court pressed for specifics, defendant said his attorney was not interested in his belief that CPS was forcing Dunn to testify against him in order to get her son back.

He also claimed he was ready for trial, but his attorney was not. When the trial court questioned defendant's attorney about this, the attorney explained that Amy Taylor was supposed to be a favorable and cooperative witness, but that he had been unable to locate her. The attorney gave defendant the choice of proceeding to trial without the witness, or agreeing to waive time and try to locate the witness.  The attorney also offered his opinion that Taylor's value as an alibi witness would be diminished given statements she made at the time of the incident.

Regarding defendant's belief that CPS was forcing Dunn to testify against him, the attorney pointed out that Dunn's prior reporting of the incident was inconsistent with her having made up the accusation in order to get back her son.

The trial court found defendant's attorney was competent and thorough, and denied the motion.

Defendant was also upset because his attorney had not prepared a report after interviewing Dunn and because all his attorney talked about with him was the "down side."

The attorney explained, and the court agreed, that if a witness made statements that were unhelpful, as Dunn's were, he would not make a report.  Finally, the attorney agreed that he was "pessimistic" about defendant's chances and that "the exposure is potentially very high."  He said that because of the risk and the exposure, he thought it would be reasonable to seek a negotiated disposition.

The trial court agreed that it was the attorney's obligation to explain the down side.  The trial court denied the motion, finding the attorney "prepared" and "highly competent," and that there was enough communication and respect between defendant and counsel.

On these facts it appears that defendant was receiving adequate representation.  The trial court was also justified in finding that there was no irreconcilable conflict likely to result in ineffective representation.  Defendant's problems with which witnesses to call and whether to seek a continuance of trial were tactical matters.  Tactical disagreements do not by themselves constitute an irreconcilable conflict, nor do heated words alone require substitution.  (People v. Jackson (2009) 45 Cal.4th 662, 688; People v. Taylor (2010) 48 Cal.4th 574, 600.)  Also, "[t]he mere '"lack of trust in or inability to get along with,"' counsel is not sufficient grounds for substitution."  (People v. Taylor, supra, at p. 600.)  Defendant's problems appear to be merely an inability to get along with his counsel because counsel was honest about his assessment of defendant's case.  This does not constitute an irreconcilable conflict.

**C. June 8, 2009 Motion**

Defendant brought his third Marsden motion a week later.  He told the court there was an incurable conflict.  His complaint was that his attorney kept telling him how much time he was looking at.  He again complained that his attorney had not contacted either of his two witnesses.  He also complained that he wanted a different district attorney on the case.  He complained that his attorney told him the charges against him would result in prison time, but "[e]verybody else gets domestic classes."  He also complained that his attorney had not been able to obtain the tapes from his parole board hearing.

The attorney answered that he told defendant that the blood in the victim's ears would likely convince the jury there had been great bodily injury.  This was why defendant was looking at prison time.  The attorney stated he had been informed that the tapes of the parole board hearing no longer existed.  He also explained that his investigator contacted Amy Taylor and set up a meeting with her, but she failed to keep the appointment.  The investigator was continuing to try to contact her.  The investigator had also taken all of defendant's information on the other witness and was still searching for her.

40

1
2
3

> The trial court denied the motion.  It found that nothing had changed, and that defendant's trial attorney was more than adequately prepared.  The court then ordered the trial be put over from Monday to Friday, with the jury coming in the following Monday to give defendant time to locate his witnesses.

4
5
6

> Aside from the issue of the parole board hearing tapes, which defendant's attorney adequately explained, the third Marsden hearing raised no new issues.  The trial court did not abuse its discretion in denying the motion.

7    Nagy, 2011 WL 2848649, at *15–17.

8    ### 2. Applicable Law and Analysis

9    Pursuant to the decision in People v. Marsden, 2 Cal. 3rd 118 (1970), when a criminal

10   defendant in California asserting inadequate representation seeks to discharge appointed counsel

11   and substitute another attorney, the trial court must permit him to explain the basis of his

12   contention and to relate specific instances of the attorney's inadequate performance.  The denial

13   of a Marsden motion to substitute counsel can implicate a criminal defendant's Sixth Amendment

14   right to counsel and is properly considered in federal habeas corpus.  Bland v. California Dep't of

15   Corrections, 20 F.3d 1469, 1475 (9th Cir. 1994), overruled on other grounds by Schell v. Witek,

16   218 F.3d 1017 (9th Cir. 2000) (en banc).  On federal habeas review, the relevant inquiry is

17   whether the state trial court's disposition of the Marsden motion violated petitioner's right to

18   counsel because the asserted conflict "had become so great that it resulted in a total lack of

19   communication or other significant impediment that resulted in turn in an attorney-client

20   relationship that fell short of that required by the Sixth Amendment."  Schell, 218 F.3d at 1027-

21   28.  The Ninth Circuit has also explained:

22
23
24
25

> [T]he basic question is simply whether the conflict between Schell and his attorney prevented effective assistance of counsel . . . .  It may be the case, for example, that because the conflict . . . arose over decisions that are committed to the judgment of the attorney and not the client, in fact he actually received what the Sixth Amendment required in the case of an indigent defendant ....

26   Id. at 1026.  The Sixth Amendment guarantees effective assistance of counsel, but not a

27   "meaningful relationship" between an accused and his counsel.  Morris v. Slappy, 461 U.S. 1, 14

28   (1983).

41

1    The United States Supreme Court has not specifically addressed the level of inquiry

2    required when a <u>Marsden</u> motion or other similar motion is made by a criminal defendant.  When

3    assessing a trial court's ruling on a <u>Marsden</u> motion in the context of a federal habeas corpus

4    proceeding, the Ninth Circuit has held that the Sixth Amendment requires only "an appropriate

5    inquiry into the grounds of such a motion, and that the matter be resolved on the merits before the

6    case goes forward."  <u>Schell</u>, 218 F.3d at 1025.  <u>See also</u> <u>Plumlee v. Masto</u>, 512 F.3d 1204, 1211

7    (9th Cir. 2008) ("Under our precedents, <u>see, e.g.</u>, <u>Schell</u>, 218 F.3d at 1025-26, Judge Lane had a

8    duty to inquire into the problems with counsel when they were first raised, and he did so").

9    Here, the trial court held a <u>Marsden</u> hearing, inquired into counsel's representation and

10   petitioner's complaints, and satisfied itself that the representation was adequate.  The trial judge

11   gave petitioner a full opportunity to explain his reasons for wanting to substitute another attorney

12   for his trial counsel.  At the first <u>Marsden</u> hearing, the trial judge, at petitioner's request, even

13   appointed another attorney to help petitioner present his complaints about his trial counsel.

14   Resp't's Lod. Doc. 3.  The procedure employed by the trial court in response to petitioner's

15   requests for substitute counsel complied with the Sixth Amendment.  <u>See</u> <u>Stenson v. Lambert</u>,

16   504 F.3d 873, 887 (9th Cir. 2007) (inquiry was adequate when court determined that the lines of

17   communication were open and counsel was competent); <u>United States v. Prime</u>, 431 F.3d 1147,

18   1155 (9th Cir. 2005) (inquiry was adequate where defendant 'was given the opportunity to

19   express whatever concerns he had, and the court inquired as to [defense attorney's] commitment

20   to the case and his perspective on the degree of communication."); <u>cf.</u> <u>Schell</u>, 218 F.3d at 1027

21   (remanding for an evidentiary hearing where the state court failed to make any inquiry into

22   alleged deterioration of attorney-client relationship and the substance of the petitioner's claims).

23   This court has reviewed the transcript of petitioner's <u>Marsden</u> hearings and does not find

24   that a conflict between petitioner and his trial counsel had become so great that it resulted in a

25   constructive denial of petitioner's Sixth Amendment right to counsel.  <u>Schell</u>, 218 F.3d at 1027-

26   28.  Under the circumstances of this case, the trial court was not unreasonable in concluding that

27   petitioner's trial counsel was providing competent representation.  The decision of the California

28   /////

1    Court of Appeal to the same effect does not violate established United States Supreme Court

2    authority.  Accordingly, petitioner is not entitled to relief on his <u>Marsden</u> claims.

3    **H.  Ineffective Assistance of Counsel**

4    In his first ground for federal habeas relief, petitioner claims that his trial counsel rendered

5    ineffective assistance in failing to object to the introduction of prior uncharged offenses, failing to

6    object to prosecutorial misconduct in introducing evidence of prior uncharged offenses in the

7    middle of the trial without notice to the defense, failing to prevent Dunn from testifying to

8    "whatever she wanted" and making derogatory outbursts on the witness stand, failing to object to

9    prosecutor's questions that elicited from Dunn damaging testimony about prior uncharged

10   offenses, and failing to object to "witnesses bringing in hearsay evidence on the stand."  ECF No.

11   1 at 5.  Petitioner's claims of ineffective assistance of counsel were not raised in any state court

12   filing and are therefore unexhausted.  Petitioner agrees that the claims are not exhausted, but he

13   argues that "they are within reason of why my <u>Marsden</u> motion should have been granted."  ECF

14   No. 42 at 1.

15   The applicable legal standards for a claim of ineffective assistance of counsel are set forth

16   in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To succeed on a <u>Strickland</u> claim, a defendant

17   must show that (1) his counsel's performance was deficient and that (2) the "deficient

18   performance prejudiced the defense."  <u>Id.</u> at 687.  Counsel is constitutionally deficient if his or

19   her representation "fell below an objective standard of reasonableness" such that it was outside

20   "the range of competence demanded of attorneys in criminal cases."  <u>Id.</u> at 687–88 (internal

21   quotation marks omitted).  "Counsel's errors must be 'so serious as to deprive the defendant of a

22   fair trial, a trial whose result is reliable.'"  <u>Richter</u>, 562 U.S. at 114 (quoting <u>Strickland</u>, 466 U.S.

23   at 687).

24   A reviewing court is required to make every effort "to eliminate the distorting effects of

25   hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

26   conduct from counsel's perspective at the time."  <u>Strickland</u>, 466 U.S. at 669.  Reviewing courts

27   must also "indulge a strong presumption that counsel's conduct falls within the wide range of

28   reasonable professional assistance."  <u>Strickland</u>, 466 U.S. at 689.  This presumption of

43

1   reasonableness means that the court must "give the attorneys the benefit of the doubt," and must

2   also "affirmatively entertain the range of possible reasons [defense] counsel may have had for

3   proceeding as they did." Cullen v. Pinholster, 563 U.S. 170, 196 (2011) (internal quotation marks

4   and alterations omitted).

5        Prejudice is found where "there is a reasonable probability that, but for counsel's

6   unprofessional errors, the result of the proceeding would have been different." Strickland, 466

7   U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the

8   outcome." Id.  "The likelihood of a different result must be substantial, not just conceivable."

9   Richter, 562 U.S. at 189.  A reviewing court "need not first determine whether counsel's

10  performance was deficient before examining the prejudice suffered by the defendant as a result of

11  the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of

12  lack of sufficient prejudice . . . that course should be followed." Strickland, 466 U.S. at 697.

13       Petitioner has failed to demonstrate prejudice with respect to any of his claims of

14  ineffective assistance of counsel; therefore, they should be denied.  As set forth above, the court

15  has determined that the introduction of evidence of uncharged offenses was not prejudicial under

16  the circumstances of this case, that the prosecutor did not commit misconduct, and that Dunn's

17  outbursts on the witness stand did not render petitioner's trial fundamentally unfair.  Even

18  assuming arguendo that trial counsel rendered deficient performance in failing to object to any or

19  all of this evidence, petitioner has failed to show that the result of the proceedings would have

20  been different had he done so.

21  **IV. Conclusion**

22       Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED that

23  petitioner's application for a writ of habeas corpus be denied.

24       These findings and recommendations are submitted to the United States District Judge

25  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

26  after being served with these findings and recommendations, any party may file written

27  objections with the court and serve a copy on all parties.  Such a document should be captioned

28  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

1    shall be served and filed within fourteen days after service of the objections.  Failure to file

2    objections within the specified time may waive the right to appeal the District Court's order.

3    Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

4    1991).  In his objections petitioner may address whether a certificate of appealability should issue

5    in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing

6    Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

7    enters a final order adverse to the applicant).

8    Dated:  November 21, 2016

9

10

11   DB:8
     Nagy2948.hc;DLB1;prisoner-habeas

12

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

45